BACON & BATES v. WM. J. RUSSELL.

(Case No. 3828.)

1. PRACTICE IN SUPREME COURT — ESSENTIAL QUESTIONS.— See this case for circumstances under which the supreme court, of its own motion, suggested and considered the question of the constitutionality of a special act of the legislature, constituting the basis of the title of both parties, and of the title on which the appellee, as plaintiff, had recovered in the lower court.
2. CONSTITUTION OF 1870 — GRANTS OF LAND PROHIBITED BY.— Section 6, art. X, of the constitution of 1870 prohibited not only the direct grant of land, but also every step which could ultimate in a grant, to other than an actual settler.
3. SPECIAL ACT — BOUNTY.— The terms of the special act of February 19, 1873, granting Wm. J. Russell a certificate for six hundred and forty acres of land for his participation in the campaign against Bexar in 1835, would be satisfied by any participation in that campaign; but those only could claim the bounty granted by the act of December 21, 1837, who had rendered the specific services named in that act — those "who entered Bexar from the morning of the 5th to the 10th of December, 1835, and who actually took part in the reduction of the same." Russell may have rendered services in the campaign against Bexar, and yet not have rendered the services entitling him to the bounty granted by the act of December 21, 1837.
4. SAME.— The special act of February 19, 1873, was the inception and sole basis of Russell's right to a certificate of six hundred and forty acres.
5. REPEAL OF ACT OF DECEMBER 21, 1837 — SPECIAL ACT UNCONSTITUTIONAL.— But were it otherwise, the effect of the constitution of 1870 was to repeal the act of December 21, 1837, and to place it beyond the power of the legislature to revive rights to land certificates, granted as a mere gratuity, and the rights lost by the failure of parties to apply for and receive the certificates. The special act under which Russell claims is unconstitutional.

APPEAL from Denton. Tried below before P. J. Mullin, Esq., special judge.

Wm. J. Russell sued John Bacon and Wm. H. Bates in trespass to try title to six hundred and forty acres of land, patented to him under a special act of the legislature of February 19, 1873, setting out the act, and claiming that the six hundred and forty acres was exempt from sale under execution by virtue of section 4 of the act of December 21, 1837, providing that "the lands granted by this act shall not be subject to sale or alienation, mortgage or execution, during the life-time of the person to whom such warrant or patent shall be granted." The defendants claimed under an execution sale of the land as the property of Russell. The case was tried without a jury, and judgment rendered for plaintiff. Neither party in their original briefs raised any question as to the validity of the grant or the constitutionality of the special act under which it was made. After the case had been submitted, the court, of its own motion, set the submission aside, and referred the case back for further briefs

on questions which will be found stated fully in the briefs of counsel for appellants, as reported. Counsel for appellee filed no additional briefs in response to the questions suggested by the court. Only so much of the briefs of counsel is inserted as bear on the questions considered in the opinion.

*Walton, Green & Hill*, for appellants.—The court has referred back to counsel two questions in this case:

1st. Does not the proper disposition of this case require this court to pass upon the validity of the act of February 19, 1873, entitled "An act for the relief of William J. Russell?"

2d. If so, was said act invalid because of the provision in article X, sec. 6, of the constitution of 1869?

In the few remarks we have to make in answer to the above interrogatories, we will first consider the proposition embraced in the last interrogatory. And we are free to affirm that, in our opinion, the act was, at the time of its passage, prohibited by the clause of the constitution referred to.

The language employed is conclusive of the question, that, by the grant of lands, is included certificates for land. Indeed, such being almost the uniform method of securing lands, it may be safely assumed that by the term "lands," it was intended to say "certificates for land."

The act is set out in full by the appellee in his petition. Its caption is, "An act for the relief of Wm. J. Russell;" and provides: Sec. 1. That the commissioner of the general land office is authorized and required to issue to Wm. J. Russell, one of the survivors of the Texas revolution, a certificate for one thousand two hundred and eighty acres of land, for his services in the army in 1835 and 1836, and six hundred and forty acres for his *participation in the campaign against* Bexar in 1835. That this is a legislative grant seems too plain for argument.

The answer given to this by appellee is that the act of 1873 should not be regarded as a grant of land to Wm. J. Russell, but should be regarded only as the ascertainment by the legislature of an existing right, which right could not be obtained because the machinery provided for its ascertainment had been abrogated or suspended by other laws; and hence the act aforesaid should be construed as being *in pari materia* with the act of 1837 (art. 4464, Pasch. Dig.).

It might be sufficient to say that the act granting land to Wm. J. Russell does not by its terms, nor by the import of its language,

refer to the act of 1837, inasmuch as the definition of the services for which it was granted, viz., "participation in the campaign against Bexar in 1835," does not include that particular class which is described in the act of 1837 as "persons who entered Bexar from the morning of the 5th to the 10th of December, 1835, and who actually took part in the reduction of the same," which act, it is insisted, applies to the grant to the appellee; nor to the explanatory act in relation to a grant of three hundred and twenty acres bounty originally provided for in the act of 4th December, 1837 (Pasch. Dig., 4057), and which grant of three hundred and twenty acres, it appears by the preamble of the act of December 30, 1840 (Pasch. Dig., 4069), had been refused by General Johnston as secretary of war, unless the applicant could show that he had performed a service of three months. That act made an honorable discharge from the service, whether they had served out their time of three months, sufficient ground to authorize the grant of three hundred and twenty acres to those soldiers "who entered Bexar between the 5th and 10th of December, 1835, and actually assisted in the reduction of that place, and remained there until the surrender of General Cos."

It is a well known historical fact that there were two classes of persons or soldiers who participated in the campaign against Bexar in 1835, and that comparatively few of those who performed such service were of the class embraced in the acts of 1837 and 1840, above cited. The court will not, by implication, extend the terms of the grant to mean more than it says, inasmuch as the same is a donation or bounty given by the state, and to which, under repeated rulings of this court, the applicant must show himself entitled. Commissioners v. Riley, 3 Tex., 239–40; Republic v. Skidmore, 2 Tex., 262–4; State v. De Casinova, 1 Tex., 404; State v. Manchaca, 1 Tex., 589.

But the act of 1873, for the relief of Wm. J. Russell, is by its very terms a legislative grant. The legislature authorizes and *requires* the commissioner of the general land office to issue the certificate, when there was no law in force by which the party could obtain it. It assumes judicially to determine the merits of the applicant, the method of proof, and to grant without reference to any pre-existing law or right, and to grant to a person named for a service not before recognized, viz.: for "participation in the campaign against Bexar." If the law had been general, providing a method by which proof could have been made by all parties entitled to land for the particular service mentioned in the act of 1837, there would be some show of reason for the construction placed on the

law by the appellee's counsel; but a personal grant to a named person, who, without legislative enactment, could not otherwise obtain it, must be construed as being forbidden by the constitution. Otherwise this private act must fall under another inhibition of the constitution, viz.: the inhibition against the legislature assuming judicial power to make the grant and to determine the facts as to the qualification and services of the applicant.

Whether it is necessarily incumbent upon the court to raise the constitutional question is another matter. Probably in this case it is not. The court may not desire to raise this question when neither of the parties below have made that point, and this view seems to have authority for its support. Weemer v. Bumberry, 30 Mich., 201. . . .

*Sheeks & Sneed*, for appellee.— . . . Appellee respectfully submits to the court the following propositions in this case, growing out of the facts and the law:

1. At the date of the passage of the special law of the 19th of February, 1873, for the relief of appellee William J. Russell, the act of December 4, 1837 (Pasch. Dig., arts. 4059 and 4058), and the act of December 21, 1837 (Pasch. Dig., arts. 4059 to 4064), had not been repealed, but were inoperative because there was no tribunal or officer authorized to issue bounty and donation certificates thereunder.

2. The legislature of the state at various times has passed laws, after the state government superseded that of the republic of Texas, for the purpose of enabling persons entitled to bounty and donation lands under the laws of the republic to obtain those lands. The enactment of such laws became necessary, either on account of change of government, or because there was no officer authorized to extend to parties entitled to such lands the evidences of their rights. Act of April 27, 1846 (Pasch. Dig., art. 4074); act of January 31, 1854 (Pasch. Dig., arts. 4075 to 4078); act of August 1, 1856 (Court of Claims Act); act of February 18, 1858 (Pasch. Dig., art. 1146); act of December 15, 1859 (Pasch. Dig., art. 1155).

3. If, under any of these several laws, the appellee had obtained a certificate for six hundred and forty acres of land " for entering Bexar from the 5th to the 10th of December, 1835, and for actually taking part in the reduction of the same," the land patented to him under such certificate would not, during his life-time, have been subject to sale under execution, unless the same had been alienated. Act of March 2, 1848 (Pasch. Dig., art. 4066).

4. The special act of the 19th of February, 1873, was intended as a measure of relief for the benefit of William J. Russell, in providing a mode by which he could obtain the benefit of the two grants of land which had been made to him by the republic of Texas, but which he had never obtained. One of these grants was one thousand two hundred and eighty acres, made to him as a bounty by the act of December 4, 1837 (Pasch. Dig., arts. 4057, 4058).

The other grant was a donation made to him of six hundred and forty acres by the sixth section of the act of 21st of December, 1837 (Pasch. Dig., art. 4064), because he was one of those who " entered Bexar from the morning of the 5th to the 10th of December, 1835, and who actually took part in the reduction of the same."

That such was the legislative intention there can be no doubt, for these reasons:

*First.* The evidence furnished by the title of the act, it being " An act for the relief of William J. Russell." The act does not, in its title or otherwise, purport to be an act having for its object to make an independent grant of land to William J. Russell without regard to any right he had under pre-existing laws. If the latter purpose had been intended by the legislature, it would not have been entitled as " An act for the relief of Russell," but " An act making a grant of land to Russell," or something of the same import.

*Second.* The legislature, in the exercise of a sort of judicial power, ascertains and determines in that act that appellee was one of the veterans of the revolution of Texas, and that he served as a soldier in the army of Texas for twelve months, during the years 1835 and 1836, and because of that fact, it requires the commissioner of the general land office to issue to him a certificate for one thousand two hundred and eighty acres of land — just the land granted him by act of December 4, 1837 (Pasch. Dig., arts. 4057 and 4058).

*Third.* The legislature in that act also ascertained and determined the existence of another fact, and that was that appellee William J. Russell actually participated in the campaign against Bexar in 1835, and for that reason, and for that reason only, the commissioner of the general land office is required to issue to him a certificate for six hundred and forty acres of land, which was done, and under that certificate the land here in controversy was located and patented.

5. That the legislature meant, by the use of the language in the special act for the relief of appellee, of 19th February, 1873, "for his participation in the campaign against Bexar in 1835," as the reason for requiring the issuance of the certificate for six hundred and forty

acres of land, the same thing, and to convey the same idea, as that expressed in the sixth section of the act of 21st December, 1837 (art. 4064, Pasch. Dig.), by the language "who entered Bexar from the morning of the 5th to the 10th of December, 1835, and who actually took part in the reduction of the same," there is no doubt. In support of this position, the court is referred to the act of December 30, 1840, of congress of the republic (Pasch. Dig., art. 4069, and the preamble and title of that act).

In the title of that act, and also in the preamble, "San Antonio" is used to designate the same place as that called in section 1 of the act by the name of "Bexar." And again in the title of that act, the words "soldiers who served in the campaign against San Antonio in the fall of 1835" are used to convey the same idea or describe the same persons as does this expression in the preamble, "soldiers who had served against San Antonio, and were engaged in the storming of that place in the fall of 1835," and to describe the same persons as are designated by the following language in section 1 of that act: "Soldiers who entered Bexar between the 5th and 10th of December, 1835, and actually assisted in the reduction of the same." In other words, in the caption, the preamble, and in the body of that act, these three expressions are used as synonymous, or as designating the same persons:

1. "Soldiers who served in the campaign against San Antonio in the fall of 1835."

2. "Soldiers who had served against San Antonio, and were engaged in the storming of that place in the fall of 1835."

3. "Soldiers who entered Bexar between the 5th and 10th of December, 1835, and actually assisted in the reduction of that place."

In the special act for relief of appellee, the certificate for six hundred and forty acres of land is required to be issued to him "for his participation in the campaign against Bexar in 1835." The only difference between this description of person and that adopted in the title of the act of December, 1840, is this: That a person to come within the category of the persons named or described in the act of December 30, 1840, *must have been a soldier*, whereas appellee, in the act for his relief, is not described as a soldier in the connection with "his participation in the campaign against Bexar." But appellee did not obtain his grant under the act of December 30, 1840, but under the sixth section of the act of the 21st of December, 1837 (Pasch. Dig., art. 4064).

The principal distinguishing features between these two acts is that a person had to be a soldier to come within the provisions of

the former, while the latter extended its provisions to citizen and soldier alike, if they "entered Bexar," etc. The similarity of description is just as striking between the expressions used in section 6, act of December 21, 1836, and in that used in the special act for relief of appellee, as are the different modes employed in the act of December 30, 1840, to describe soldiers rendering the same service.

6. Another view of the last proposition may be suggested. Under the constitution in force at the date of the special act for relief of appellee (19th of February, 1873), the legislature was prohibited from making a grant of land to any person or persons. Const. 1868, art. X, sec. 6. If the legislature had intended by this special act to make a grant or grants of land to appellee, independent of and without regard to any pre-existing law, then such special act would have been violative of the constitution and void. On the other hand, if the legislature intended by the special act merely to provide the machinery by which appellee could obtain the benefits of grants of land made to him under pre-existing laws (the acts of 1837), then the special act is free from constitutional objection. This court will not construe the special act of 19th of February, 1873, as violative of the constitution, if any other reasonable interpretation can be given it.

7. We conclude, therefore, that the six hundred and forty acre certificate issued to appellee, under the special act for his relief, of 19th of February, 1873, was extended to him under and by virtue of the donation made to him in sixth section of act of 21st of December, 1837 (Pasch. Dig., art. 4064), as a "person who entered Bexar from the morning of the 5th to the 10th of December, 1835, and actually took part in the reduction of the same." If this be true, then the special act of 19th of February, 1873, and the general law of the 21st of December, 1837, will be construed *in pari materia*, and the exemption from execution contained in section 4 of the latter act (art. 4062, Pasch. Dig.) applies to the land in controversy. 15 Tex., 102, 103; id., 320; 20 Tex., 363; Smith's Commentaries on Constitutional Construction, sec. 642.

Stayton, Associate Justice.— The appellee claims the land in controversy under a patent which issued upon a land certificate which he received for six hundred and forty acres of land, under an act entitled "An act for the relief of Wm. J. Russell," passed February 19, 1873, which reads as follows:

"Be it enacted by the legislature of the state of Texas, That the commissioner of the general land office be and he is hereby author-

ized to issue to Wm. J. Russell, one of the survivors of the Texas revolution, a land certificate of twelve hundred and eighty acres for his services one year in the army of Texas, during the years 1835 and 1836, and a further certificate of six hundred and forty acres for his participation in the campaign against Bexar in 1835." The derivation of his title is set out in his petition, and as he must recover upon the strength of his own title, it becomes necessary to examine its validity, however gladly we would avoid such examination, both parties claiming under the same title, were it not essential so to do.

The constitution in force when the act of February 19, 1873, was passed, provided that " The legislature shall not hereafter grant lands to any person or persons, nor shall any certificates for land be sold at the land office, except to actual settlers upon the same, and in lots not exceeding one hundred and sixty acres." Const. 1870, art. X, sec. 6.

This section of the constitution evidently prohibited not only the direct grant of land, but it prohibited every step which could ultimate in a grant of land, to other than an actual settler, and to such limited the grant to one hundred and sixty acres.

To avoid the effect of this constitutional prohibition, it is claimed that the act in question but provides the means by which a prior right to a bounty warrant for six hundred and forty acres of land might be enforced, and that the right was secured to the appellee by the act of 21st December, 1837 (Pasch. Dig., 4059–4064), and that this was never repealed.

It does not clearly appear that the act of 21st December, 1837, covered the same class of bounties as that which the legislature attempted to confer upon the appellee; for that act was applicable only to those persons " who entered Bexar from the morning of the fifth to the tenth of December, one thousand eight hundred and thirty-five, and who actually took part in the reduction of the same."

The act under which the appellee claims does not show that he rendered the specific services for which the bounty was given by the act of 21st December, 1837, but upon its face appears to be a bounty " for his participation in the campaign against Bexar in 1835."

Any participation in the campaign against Bexar in 1835 would satisfy the act now under consideration, but it would not satisfy the act of December 21, 1837; for that gave the special bounty only for the specific services named in the act.

Other services during the campaign against Bexar in 1835 may

have been as meritorious as those named in the act of December 21, 1837; but those only could claim the bounty given by that act who came within the spirit of its language.

We know historically that the campaign against Bexar did not begin on the 5th and end on the 10th of December, 1835; hence the implication does not arise from the fact that W. J. Russell may have rendered services in the campaign against Bexar in the year 1835, that he entered Bexar from the morning of the 5th to the 10th of December, 1835, and that he actually assisted in the reduction of that place.

The ordinary bounty for military services rendered in 1835 were under the act of November 24, 1835 (Pasch. Dig., 4035); the act of December 5, 1835 (Pasch. Dig., 4037, 4039); the act of December 14, 1835 (Pasch. Dig., 4041), and the act of December 14, 1837 (Pasch. Dig., 4057, 4058), which last was no doubt explanatory of preceding acts, and probably regulated the entire matter of issuing bounty warrants after its passage, for military services, for which special bounties were not provided.

It not being shown that under any former law the appellee would have been entitled to a certificate for six hundred and forty acres of land as a special bounty for services at Bexar, it must be held that the inception of, and sole basis for, his right rests upon the act of February 19, 1873.

It is not perceived, however, if the appellee brought himself within the letter of the act of December 21, 1837, that it would better his condition.

It is true that the act of 21st December, 1837, was never in express terms repealed; but it is believed that the provision of the constitution referred to had that effect, if it had not been practically repealed before the adoption of the constitution.

The grant of bounty certificates by the act of December 21, 1837, was a mere gratuity, based upon no prior promise for service to be rendered, and the government could have withdrawn the power to issue them at any time without violating any rule of constitutional law.

From the date of the statutes which authorized the issuance of such certificates until the act of December 15, 1859, various acts were passed, to enable all who were entitled to receive the bounty of the government to obtain their certificates. Pasch. Dig., 1146, 1155, 4074, 4075, 4078, and note 437.

In many of the acts a time within which application should be

made was named, with a declaration that all who did not apply for their certificates should be barred.

So stood the law at the time of the adoption of the constitution of 1870. Ample time had been given to all who were entitled to receive the bounty of the government, and those who had not done so were barred.

In the absence of the constitutional provision referred to, the legislature might have removed the bar, and have given further time and means to acquire the certificates, as had been so often done before; but the right having ceased, and the constitution having declared that the grant should not be made, the legislature was powerless to revive the right which had once existed, but had been lost by the failure of the party to apply for and receive the same from some of the officers of the government authorized from time to time to issue the certificates.

If the certificates had been issued but not located, the constitution of 1870 fixed a period after which they could not have been located. Const., art. X, sec. 4.

The bar thus fixed for the location of land certificates was removed by the present constitution and a further time given. Const., art. XIV, sec. 2. The time thus given has now expired, and certificates not located and returned to the land office within the time prescribed are now barred, and the legislature might as well undertake to authorize parties holding such barred certificates now to locate and have them patented, in the face of the constitution, as for the legislature in 1873 to direct the issuance of land certificates in defiance of the constitution then in force. These are examples of the exercise of the right by the state to prescribe a bar for even issued certificates, and it was but the exercise of an undoubted power.

We are of the opinion that the act of February 19, 1873, under which the appellee claims, is in violation of the constitution then in force, and consequently void; hence he has no title whatever to the land in controversy.

This view of the case renders it unnecessary to inquire whether the property was subject to execution or not, further than has been incidentally done.

The judgment is reversed and the cause is dismissed.

REVERSED AND DISMISSED.

[Transferred to Tyler, and decided November 10, 1882.]